[No. 1495.]

JOE SITTERLEE *v.* THE STATE.

1. THEFT—POSSESSION OF RECENTLY STOLEN PROPERTY—CHARGE OF THE COURT.—Where, in a prosecution for theft, the State relies upon the defendant's possession of recently stolen property as an inculpatory fact, any explanation given by the defendant at the time he was found in possession, respecting his possession, is admissible in evidence; and, if it be reasonable and exculpatory, the State is charged with the onus of proving the falsity of such explanation before such possession can of itself be held criminative of the accused.   See the opinion for a state of the case wherein the court erred in failing to instruct the jury as to the principle enunciated.

2. SAME—EVIDENCE—ACCOMPLICE.—See the opinion *in extenso* for evidence which required that the court, though not requested, should have given in charge the substance of Article 741 of the Code of Criminal Procedure, regarding the testimony of an accomplice.

APPEAL from the District Court of De Witt.   Tried below before the Hon. H. C. Pleasants.

The indictment charged the appellant with the theft of two horses, the property of V. Weldon, in De Witt county, Texas, on the fifteenth day of October, 1882.   The appellant was convicted, and his punishment was assessed at a term of five years in the penitentiary.

V. Weldon was the first witness introduced by the State. He testified that he came to Cuero from his ranch, about seventeen miles west from that town, about the last of September, 1882, and brought with him two sorrel horses, one branded RAY, and the other branded 7Y. These horses were his property, and he turned them out in Cuero when he reached that town. The animals strayed off or were taken away by some person or persons a few days afterwards. The witness instituted inquiries for them, and after a time learned that they were in Nichols's pasture, which was on the road to the witness's ranch, and about three miles distant from Cuero. Some weeks later the witness ascertained that the horses had been seen at or near Ben Stout's place, two miles above Cuero. This information the witness obtained from Jeff. White, who said that he saw the horses in the possession of the defendant. He ascertained also that the defendant reached Ben. Stout's one morning near daylight, and, after remaining there all day, left, going up the country. The witness started immediately for Austin, but could hear nothing of the defendant or of the horses. He left a description of the horses and of the defendant with the authorities of Travis county, and returned. The defendant returned to the Cox ranch in De Witt county shortly afterwards, when he was arrested by Sergeant Rudd.

A few days later the witness received a telegram from the sheriff of Travis county, stating that he had the horses and the man. Thereupon the witness went to Austin and found his horses in the possession of one Ed. Payton, who was under arrest. Payton was released, and is now a witness in this case. The defendant had then disobeyed an attachment as a witness summoned to testify against parties on trial at Lockhart, Caldwell county, for cattle theft, and was dodging the officers, who had another attachment for him. The witness had brought these two horses to Cuero for the purpose of driving them to Lockhart, to attend the Caldwell county district court. The defendant was to go along with him to attend that court as a witness. The horses were taken in De Witt county, without the consent of the witness, who was the sole owner.

Ben. Stout testified, for the State, that he lived about two miles from Cuero. His field lay on the public road leading from Cuero to Concrete and Gonzales. Some time early in October, 1882, the defendant came to the witness's house just before daylight, riding a sorrel horse branded RAY, and leading a sorrel horse

branded 7Y.   After sunup the witness and the defendant staked the two horses in the field of the witness, who pointed out to the defendant the place to stake them.    They were staked about two hundred yards from the witness's house, about one hundred and fifty or two hundred yards distant from a road leading from the house of the witness out into the neighborhood.    The field was so overgrown with cornstalks and weeds that the witness did not think that the horses could be seen from the public road. No effort, so far as the witness knew, was made at concealment. The defendant remained at the witness's house all that day, and left after night, going up the country.    He, the defendant, said that he was dodging the officers who wanted to take him to the Caldwell county district court, and that he did not want to go, as his life had been threatened if he went to Lockhart and testified against certain parties charged with theft.   The witnesss knew that the defendant had been attached as a witness in cases pending in the Caldwell county district court, and that he had disobeyed the process.

On cross-examination the witness testified that he did not hear the defendant say that he got the horses in a trade with Perry Cox, or that he got them in any other mode from Perry Cox. He did not hear the defendant say when, where or how he got the horses.   The defendant and the witness were old acquaintances, and it was nothing unusual for the defendant to visit the witness's house, though at this time the defendant had not been to the witness's house for three or four years.    Several persons were at the house of the witness on this occasion, including Jeff. White and his brother-in-law.

Jeff. White testified, for the State, that he was at Ben. Stout's house in De Witt county early in October, 1882.    The defendant came to the house just before daylight one morning, while the witness was there.   He brought with him two sorrel horses, one branded RAY, and the other branded 7Y.   He rode one and led the other.   After sunup, the defendant and Ben. Stout took the horses into the field and staked them out, where they remained all day.   The weeds and cornstalks were rather high in the field, and the witness did not think that the horses could be seen from the public road, though they could be seen from the neighborhood road that ran by Stout's house.   The witness saw no effort at concealment of the horses.

The witness and the defendant remained all day at Stout's house, and spent some time together in Stout's corn crib, talking.

The witness knew that the defendant was dodging the officers. He had, a few days before, seen Sheriff Peterson, and knew that he had an attachment for the defendant as a witness for the State in a case pending against the Tylers in the district court at Lockhart. The witness stated that he had several conversations with a friend of the Tylers in San Antonio, in which threats against the defendant were expressed in the event he went before the court and testified against the Tylers. The witness knew then that the defendant had disobeyed an attachment in the Tylers's case a short time before. The defendant either told the witness that he had traded with Perry Cox for the horses, or that Perry Cox had traded for the horses, he could not say which. At all events he left upon the mind of the witness the impression that he had obtained the horses from Perry Cox. The witness subsequently saw the horses in Mr. Weldon's lot, and instantly recognized them as the horses he saw in the possession of the defendant at Stout's. Some time after he saw the horses in the defendant's possession at Stout's, he heard that Weldon had lost some horses, and told him, Weldon, of these. The description Weldon gave him at the time suited these horses exactly.

Nichols's pasture, according to this witness, was about three miles distant from Cuero, between that town and Perry Cox's place. In going to Perry Cox's place from Cuero, the most direct route ran through Nichols's pasture. After seeing the defendant and the horses at Stout's, the witness mentioned the fact to Ad. Kilgore, giving him a description of the horses, with the request that he keep a look-out for the owners.

Perry Cox, the brother-in-law of the defendant, testified, for the State, that he did not let the defendant have the horses in question, and knew nothing more about them than that he saw two horses in his pen on the night that the defendant reached his house. He did not even know the color of those horses. The defendant had been in Victoria county for a week or two, and reached the house of the witness that night about nine o'clock, and remained over night. The witness went to Cuero the next morning and returned home about sundown, and at that time saw two horses in the lot. He, the witness, retired that night about nine o'clock, and was told by Hall next morning that the defendant left his house about two o'clock on that morning.

Cross-examined, the witness said that it was after dark when

he saw these two horses in the lot, mixed up with others which belonged on the place. He could not then tell their color. The witness knew that the defendant was dodging the sheriff, who had an attachment for him as a witness in a case pending in Caldwell county against Tyler and Long. He had heard the defendant say that he would not go to Lockhart as a witness in that case, as his life had been threatened if he did. The witness denied that he told Mrs. Niche, at her house in Cuero, on the day after the defendant left his house, that he had let the defendant have two horses to go off on. He did not remember that he saw Mrs. Niche and Mrs. Sitterlee at his house a day or two after the defendant left. He did not remember that he saw them at all, but, if he did, he saw them at Mrs. Niche's house, and did not, there or elsewhere, tell them that he furnished the defendant two horses to go off on. The defendant said that he was going into the mountains. The horse which the defendant rode previous to this time was the property of the witness.

The testimony of Wyatt Hanks is quoted in full in the opinion.

Ed. Payton testified, for the State, that he lived in Llano county, Texas. Some time in October, 1882, the defendant came to his house riding a sorrel horse and leading another sorrel horse. One was branded RAY and the other 7Y. The witness traded for these horses, giving money and a gray horse in exchange. He asked the defendant if the two sorrels were work horses, and he, defendant, replied that Perry Cox, from whom he got the horses, told him that he had worked them. The witness had lived in De Witt county, and knew both the defendant and Perry Cox. The defendant also told the witness that he was dodging officers who were attempting to serve an attachment on him as a witness; that he would not attend the court at which he was wanted, as his life would be endangered by his testimony. A few days after the defendant left the witness's house, the witness worked the horses to Austin, and was there arrested, and the horses taken from him. A few days later, Mr. Weldon reached Austin and took the horses, and the witness was released. The State closed.

Mrs. Sitterlee was introduced by the defendant, and testified that she was his wife. Some time in September, 1882, the defendant left home and went to Victoria county in order to avoid service of an attachment which had been issued against him as a witness against parties on trial in the District Court of Caldwell county. He, the defendant, thought that it would endanger

his life to attend the court and testify in that case. The witness herself had heard that the defendant's life had been threatened if he went to Lockhart and testified in the case.

The witness further stated that during the early days of October, 1882, she was at Mrs. Niche's house in Cuero, and there saw her brother, the witness Perry Cox. Perry Cox told her that the defendant had been at his house the day before, and that he had gone up the country. The witness asked Perry Cox what the defendant rode, and Perry Cox replied that he, Perry Cox, had let the defendant have two horses to go off on. The defendant had been riding a horse which belonged to Perry Cox.

Mrs. Niche, a sister of the defendant, testified that Perry Cox was at her house early in October, 1882, and she asked him about the defendant. Perry Cox told her that the defendant was at his house on the day before, but had gone up the country on horses he, Perry Cox, had provided.

It was agreed that the State proved the venue.

The motion for new trial assailed the verdict as contrary to the law and evidence, attacked the charge of the court as given, and the action of the court in refusing charges asked, and arraigned as error the rulings of the court on the motion to quash the indictment, and on objections interposed upon the organization of the jury.

*Lackey, Stayton & Kleburg,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, J.   Sitterlee was convicted of the theft of two horses, the property of V. Weldon. The prosecution relied for a conviction almost entirely upon the fact that defendant was in possession of the horses recently after they were stolen. Defendant, while in possession, gave a reasonable account of his possession, stating in substance that he had gotten the horses from one Perry Cox.

In reference to the question of recent possession, defendant by his counsel requested the court to instruct the jury as follows:

"Any explanation which the party in whose possession the property is found may give, at the time, as to the nature and extent of his possession and how he came by it, is admissible in evidence either for or against him; and if the explanation, when testified to before the jury, seems to them to be reasonable and

is not shown to be false, the presumption against the accused from his possession is rebutted, and the jury are not justified in conviction without further evidence against him."

These instructions were refused by the court upon the ground that they were upon the weight of the evidence.

When the State relies upon recent possession and the defendant gives a reasonable explanation of his possession, the case thus made is completely met, and, to make the recent possession available, the State must prove the explanation false. This being a just and legal principle, is it beyond the power of the court to give it, by proper instructions, in charge to the jury ? We think not. It is true that a charge to the effect that recent possession of stolen property is *prima facie evidence* of guilt has been held, and we think correctly, a charge upon the weight of evidence. But the refused charge (the one under discussion,) does not intimate an opinion upon the weight of the evidence, but seeks to inform the jury of the rule, which is found in all of the texts written upon this subject.

Whether the charge in question was exactly correct or not, it certainly called the attention of the court to the subject, and made it necessary for the court to frame and submit one to the jury which contained the rule above alluded to. We are of the opinion that the court erred in not submitting to the jury a charge containing the principle indicated in the refused charge.

Defendant having met the case made by the State by proof of recent possession, by reasonable explanation, the State, to further rely upon recent possession, was bound to prove the explanation false. To effect this, Perry Cox was introduced by the State, and by him the explanation of defendant was shown to be untrue, thus rehabilitating recent possession with all of its criminative force.

Upon cross-examination, Cox denied that he had told any person that he had let defendant have the horses. Defendant proved by several witnesses that he had, and the State, by Wyatt Hanks, proved the following facts. Hanks says:

"I was working at Perry Cox's place about the last of September or first part of October last, when Sitterlee came there. Sitterlee came there one night after dark, stayed all night. I was working in the cotton field. Perry Cox went off about nine o'clock in the morning, was gone all day, and came home about sundown or a little before, and went out and brought up sheep. Sitterlee was on the place off and on all day; could not say he

2L

did not go off the place that day, but I saw him there several times during the day. Defendant came down to the cotton field where I was picking cotton several times that day. Perry Cox went off in the morning and did not return until about sundown. About nine o'clock that night, Perry Cox told me that he had let Sitterlee have two horses to go off on, and that he wanted me to go with him after them. I consented to go. Perry Cox, defendant and myself started out about nine o'clock to look for the horses. After going some distance from the house defendant said to me, 'Do not say anything about my being here, or what I am going to do.' I suspicioned there might be something wrong, and made an excuse to stop. I told Cox and Sitterlee I wanted to fix something about my saddle. Cox and defendant rode on, and I returned to the house and went to bed about eleven o'clock that night. Cox and defendant came back to the house, and Sitterlee asked me why I stopped and did not go with them. I told Sitterlee I had got lost from them. Next morning Sitterlee was gone; don't know what time he went off."

It will be borne in mind that the horses were stolen about the last of September, 1882. The witness Hanks states that defendant, Cox and witness went, about the last of September or first of October last, at about nine o'clock at night, after the horses which he said he had let Sitterlee have. When we take into consideration the fact that Cox had told a number of persons that he had let Sitterlee have the horses, or two horses, his sworn denial that he had so told them, and the evidence of the witness Hanks, we are clearly of the opinion that he was an accomplice; if not, certainly there is sufficient evidence, tending to thus characterize him, as made it necessary for the court to give in charge Article 741 of the Code of Criminal Procedure. The evidence of the witness Cox was of the first importance to the prosecution. The case, as before said, made by recent possession being successfully met by the reasonable explanation of defendant, it was, owing to the meagreness of the other inculpatory facts, necessary for the State to prove the explanation false. This was done by Cox. How by him? The State by him was enabled to turn the almost evenly-balanced scales against the defendant. It is true that the law of Article 741 was not requested, nor was the charge of the court excepted to for its omission, nor did defendant embrace this omission in his motion for new trial. Still, we think it proper to call the attention of the court below to this matter. Believing that all of the law

applicable to the whole case was not given in charge to the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered March 17, 1883.